Good morning, Your Honors. May it please the Court, my name is Christian Rogendorff and I'm counsel for Appellant Emmert Industrial Corporation. This case presents the Court with two essential questions. First, does it present an unconstitutional condition for a government entity to require, as a condition of receiving a permit, the waiver of its liability for future acts committed solely to its discretion? And second, if so, does this condition nonetheless meet the standards of the unconstitutional condition doctrine? That is, is the exchange of the right to sue roughly proportional to the granting of one necessary permit and the promise to timely, quote-unquote, process, but not, in fact, grant another? Counsel, under Town of Newton v. Rumery, it's pretty clear that a voluntary agreement to not sue the government does not violate the Constitution, nor are we really talking about the nexus issue here, whether this is closely enough tied. It's more of a matter of degree rather than just the concept that people can waive rights to sue the government in exchange for a permit. Isn't that correct? Yes, Your Honor. Yes. The — to back up, the unconstitutional condition would be not necessarily giving up the right to sue, but conditioning the permit on the ability to go ahead and go to court for future liability. That's the condition we're talking about, not necessarily in particular just the right to sue the government, because — Let me just ask you one thing. This — the agreement was never signed in this case, was it? No. So what are we even talking about here? He didn't give up anything. He not only didn't give up the right to sue, he sued. Well, there's two — And the city simply went ahead with the process that's established under the municipal code to abate the nuisance. Yes. What's the complaint? There's two answers to that, Your Honor. The first is the persuasive precedent of Beezer. Now, we're not saying that, of course, it's binding. But in Beezer, there was an unconstitutional condition there. Now, the Court did find a nexus in that case. But Beezer — in Beezer, Louisiana Pacific did not sign the agreement with the government. The second answer to that is by analogy. Let's say we had a — And I know you say it's not binding. Of course, it's not. But why do you think that is — why does that have any relationship to this case? Because it's a context of a settlement where the government offered a — essentially a requirement that Louisiana Pacific go ahead and hand its financial well-being over to the government for the duration of the cleanup process. But how do you deal with Town of Newton v. Rimmery, which is a U.S. Supreme Court case, which, of course, is binding on it? Well, I would say that the — this circuit has ruled that in the — at least in the settlement context in Davies v. Grossmont School District, that certainly the government cannot condition settlements under relinquishment of constitutional right. Well, but that's not — aren't you overstating the point, counsel? I mean, obviously, you can't say, you know, unless you sign the document, we're going to execute your eldest son. But in this case, you're talking about a public right. The public has a right under the police powers to abate a nuisance. In this case, the city seems to have bent over backwards to work with your client to try to find a way to accomplish something. There was apparently difficult negotiations. Your client ultimately decided not to sign the document. Accordingly, he made a choice. He is not — he didn't sign anything away. He simply didn't sign something that would have granted him a permit. It was clear under the terms of the agreement that had he done so, he would have had a place to go. All the permits would have been issued. It would have been done in exchange for the waiver. He decided that, and for other reasons, he wasn't going to do it. If that were the case, Your Honor, if the agreement actually granted all the permits, I believe I would concede that. But the agreement by its very terms, in fact, does not. What do you cite in the agreement where you believe that's the case? The paragraph — paragraph 6, excerpt of record 10. It says, Emmert Schell applied for a permit, and the city would process the building moving permit in a timely fashion. That doesn't mean it's going to be granted, Your Honor. And that — under the Milwaukee Code at the time, the city manager had absolute discretion to grant or deny a moving permit. There were no standards. There was no explanation whatsoever. And, in fact, the animosity shown in the record, specifically at excerpt of record 50, toward Emmert for his past actions in Milwaukee at least raises a question of fact. Let me ask you a question. Originally, there were four causes of action, and you're basically proceeding on the second. The first and third, you alleged, or your client alleged, unconstitutional deprivation of property interests and also denying applications for permits was done in an arbitrary, capricious fashion. You lost on that in the district court. You elected not to appeal. For purposes of this appeal, aren't we — don't we have to assume that there was no constitutional deprivation of any property interest up to this point in time? And don't we have to assume that the denial of applications for permits was not done in an arbitrary or capricious manner? I believe so. Yes, Your Honor. So, therefore, there is no bad acts that we can consider for purposes of your claim at this point in time because there was no unconstitutional deprivation and there was no arbitrary, capricious action. Is that correct? No, Your Honor. Why? Respectfully. There is a difference between what is unconstitutional and what is wrong. There is certainly evidence in the record that the city of Milwaukee bore at least some animosity towards Emmert for his past location of a — Under the breach of contract, which is your fourth cause of action, that has been sent back down to the State courts. No longer in front of us. Yes, Your Honor. When you say wrong, what do you mean? Wrong in the sense of — Morally wrong? Well, yeah. But also, the first aspect, the first cause of action was a property right. And the property right analysis under Bateson has to be keyed to a ministerial act on the permit. That's all that's left. In fact, we did not have that here, and I'd have to concede that. The city manager had discretion to go ahead and issue the moving permit. There's two permits here, the building permit and the moving permit. City manager had absolute discretion to issue that moving permit or not. And therefore, there was no protectable property interest under Bateson. I don't frankly understand what your client's claim of damages is in this particular situation. Is he upset — or is it upset because it was made this offer, which you could have elected to accept or not? Well, there's — I don't understand what the claim is. Well, there's certainly an amount of sunk costs and time and effort. And frankly, I believe what your question is is sort of going toward causation. What's the damages here, which the opposing counsel has addressed? The idea that no harm, no foul exists in an unconstitutional condition case would essentially gut the doctrine. Just because they make the deal bad enough to go ahead and reject it otherwise. There's a strong question as to whether or not this is a viable doctrine because it has no mooring. It has no normal application, just abnormal applications. Well, it's certainly a viable doctrine in the sense that the Supreme Court has recognized it recently. The circuit recognizes it frequently. But there are severe limitations and restrictions. Yes. Yes, Your Honor. I don't know of any — do you know of any case where, you know, relief has actually been granted to a plaintiff who sued on an unconstitutional condition claim? Both — two cases in this circuit, Your Honor. The first is Davies v. Grossmont Union High School District. That unconstitutional condition was part of a settlement of a lawsuit. And the man subsequently — the condition was the party would not seek or accept any position of authority in the school district. The unconstitutional condition was that essentially as a matter of settling, he had to give up his right to have the voters elect him. And the court ruled that that was simply an unconstitutional condition. In fact, your claim really — as I understand your claim, you're not really complaining about, you know, the clause about, you know, releasing past claims, are you? No. You're talking about future claims. Correct. Right? And to me, there's, you know, that — that term of the settlement, it's not completely clear. I mean, maybe you could read it to, you know, release future claims. But my question really is, so if you thought it could be read as to releasing future claims and you didn't like that, did you go back and say, well, look, this is OK, except we don't want to release future claims because we think that's unconstitutional. Did you ask him to take that part out? Yes, Your Honor. And what was their response? Their response was to go ahead and — No, but did they say, no, this is a — this is a take-it-or-leave-it settlement offer? The June — We're not ready to — we're not ready to modify it at all? The June 18th letter from Emmert to the city set out several problems with the agreement. But it includes — But the first — the first and foremost, it's that first, quote, unquote, first and foremost, is this waiver provision. And I would draw the Court's attention, in fact, to Davies, where on page 1399, it says, in particular, that — oh, actually, 1394, excuse me, a settlement agreement that says, any office or position with the district in any capacity, this is the quote, quote, any is an all-encompassing term. Here, the parties used two anys in one sentence in order to make certain there would be no doubt as to their intent. We used three anys. No, no, no, no, no, no. What I'm getting at is, so did you try to get this changed? In other words, you know, did you — Yes, Your Honor. Yes, and — And did they — did the city insist that, no, we have to have a release of future claims? I do not know if the city responded, frankly, Your Honor. We issued — I'm trying to find the ER site for you. I don't think you even suggested a change. You just said — I thought you said, we can't accept this because it has this condition, period, and we're going to sue. Ah, okay.  I see what you're — I see what you're saying, Your Honor. Why don't we do this? We'll give you the full five minutes for rebuttal, give a chance to reflect on Judge Tashima's question. Perhaps we can now hear from the City of Milwaukee, Mr. Corrigan. Thank you. May it please the Court, Chuck Corrigan for Respondents, City of Milwaukee. The Court's inquiries indicate that the city's positions, I think, have been understood, as we hope to present them. I would be glad to answer questions. I think one thing I would point out, we did submit a decision from this circuit to the Court that was issued after a briefing was concluded at the Nielsen case, where an applicant for a job with the City of Mesa, Arizona, was required to waive future claims that might accrue as the city was doing its background check. Was that a 28-J letter that you sent? It was, Your Honor. What was the site on Nielsen? Thank you. 503F3R947. Thank you. September 07. In that situation, the applicant was asked to waive future claims of employment in civil rights nature. If they accrued during the future background check, background check was undertaken, didn't get the job, and lo and behold, she sued. And this Court held that that waiver was valid and binding, that she had waived her right to bring those claims. If you could just maybe give the city's perspective. I believe Mr. Rogendorf indicates that one of the reasons why the agreement was never signed was because there was no express language in the agreement that required the city to grant the permit just to process it. Was there anything, I've looked at the agreement, is there anything subsequent to the draft agreement which was never signed that would have obligated the city to not only process but to grant the permit, probably through the city manager without a full council hearing or something, to permit this to go forward had the agreement been signed? No, but if I could elaborate. Okay. It's noted in the paragraph 3 of the final agreement, the last sentence, and in paragraph 10, the first sentence, both those sentences say essentially that the city won't demolish so long as Emert is in compliance, such that if Emert, he's going to get his building permit, the moving permit he applies for, the city agrees to process timely. The city had told, the record shows, Emert, that both permits were available, so process timely I think can be interpreted as meaning you're going to get it, but in any event, were the city not to process it, it still could not demolish so long as Emert did what he was supposed to. So your view is that that should have given him comfort had he chosen to sign it? Clearly. I think the process came to a screeching halt. As I pointed out in the papers, there were five other terms in this agreement which he outright rejected. That's our cause and factor argument. He wasn't going to sign it in any event. So I got it from the city's perspective. This is pretty straightforward. Despite all the goings and comings of the parties, a final version of the agreement was offered, rejected. Emert was not stopped from suing. Indeed, they did sue. The city moved forward with its well-staked public nuisance approach, which has been tested in many, many cases. There's absolutely no basis to proceed with anything here because nobody signed off on anything. Is that a fair statement of your position? Very fair. Let me ask. Is the city's position if it had denied the building moving permit that Emert could have sued, even though it signed the agreement with this language? If it – oh, I think if the city didn't live up to this contract – That's not what I asked. I'm sorry. With the language of the proposed agreement, which contains paragraph 11, if the city denied Emert the building moving permit, Emert could have sued even though it signed this agreement. No, he could not have unless the city breached this agreement in some fashion. But if it denied the second permit, Emert could not have sued. You see, as I understand now, Emert's primary complaint about unconstitutional condition is that you required a waiver of future rights and nobody knows what they are, right? You know, a claim that has not even arisen. That's a fair reading of the agreement, isn't it? In other words, you know, agrees not to seek any remedies in any form against the city relating in any way to the subject of this agreement, right? Is that a fair reading? In other words, you're waiving – they're waiving future claims? Under the – with regard to the subject of this agreement, which was understood to be the issuance of the permits. That's in the record. Well, no, but the subject of this agreement is quite broad. Well, it's been admitted to be. It could be. But for instance, I mean, they can sue you for a breach of the agreement if you refuse, you know, you send – they sign an agreement, you know, and then the next day say, well, we changed our mind, you know, we're going to cancel the agreement. There's no remedy, right? Of course there is. Well, it says – it says we waive any remedy, you know, for any claim relating to the subject matter of this agreement. Well, it's more of a – That's a waiver of all future claims. Isn't that – is that a fair reading of the provision? No. I would suggest, Your Honor, that – Well, then why didn't you, you know, when they said, well, we don't like this last sentence, why don't you clarify it? Well, they didn't like five other sentences that they wouldn't comply with. So we – well, it's the House's, we had a right to do. But if I could speak to the point the Court was making with regard to if the city breaches this agreement, well, then Emert has no obligation to adopt his terms in the agreement. His waiver is contingent upon the city abiding by its terms. So it's basically a failure to comply on the part of one party excuses performance on the part of the other. Yes. I have a question. Mr. Ruggendorf has mentioned this waiver issue. But weren't there other aspects of the contract that his client objected to besides the waiver that were bases for his not signing the agreement? He disagreed with the city's proposed timeline, which the city had – was trying to after nine months get this problem resolved one way or the other. He wouldn't pay a portion of the costs incurred, about $4,000 out of a lot more than that. He wouldn't work with the demolition contractor who was lined up to do the demolition to make sure the contractor was on board if the contract wasn't complied with. He wouldn't pay SDC fees if there were any for the move. And he wouldn't get the bond the city required. All those were absolute no's. So basically to single out the waiver is to some degree kind of a red herring, isn't it? Yes. Any other questions? No. Oregon has implied to have a good faith and fair dealing in all of its contracts, doesn't it? It does. All right. That's what's in the state court right now. It's a good faith claim that went to the state court by remand, along with the city's counterclaims on the contract. Any other questions? Thank you very much. Thank you. Mr. Rogendorf, you have five minutes for rebuttal. Thank you, Your Honor, and I appreciate the extra time. Real quickly, if the Court will indulge me, I would like to provide an analogy, which I think addresses at least several of the Court's concerns. The unconstitutional condition doctrine certainly would apply in the First Amendment context. I think everybody agrees on that if you waive your First Amendment rights. Let us, for argument's sake, say that the city of Milwaukee, Portland, whatnot, conditioned a protester's right to receive a permit upon the protester not saying certain things, as well as time, manner, and place limitations for, say, a politician's visit. But that, with respect, isn't that completely inopposite to this case? Because what is the constitutional right that you're talking about here that is allegedly being waived? The First Amendment's another matter. I mean, that's fairly established. Well, this is the First Amendment, Your Honor. It's the right to petition the government for the redress of grievances through access to the courts. But the mere waiver in the midst of a dispute of suits involving the subject matter of the dispute in the form of a settlement has never been considered to be applicable to this particular doctrine, has it? And that's the worst-in-case law for that. Well, in Beezer, it certainly was. No, but Beezer, it's a — the plaintiff lost in Beezer in the end. Because of the proportionality, Your Honor. Because in particular, under CERCLA, what he was giving up was not future liability. And I think that's the key here. What Louisiana Pacific was giving up in Beezer was not future liability. It was liability in the future for past acts, for cleaning up pollution that had already existed. But in this particular situation, your client was giving up his right to sue under the subject matter of the particular agreement. And the particular agreement, as noted by your opponent, has within it the implied covenant of good faith and fair dealing. And so if, obviously, getting the building-moving permit was a step which was necessary to effectuate the overall goal of the agreement, if they violated that and your client hadn't gotten it, your client could sue for the breach of that contract. So I don't understand what the unconstitutional provision is in this particular situation. Well, the simple fact is, Your Honor, the unconstitutional condition doctrine says you can't offer the unconstitutional condition. Irrespective of whether it actually applies, in fact, the unconstitutional condition doctrine says you can't. But the contingency there would be the violation of the contract that was executed. There's already been an agreement from the State that you could sue if there was a breach of that agreement. So I don't understand what the unconstitutional provision is. Well, simply saying that by breaching the contract you'd be able to sue doesn't remove the condition. The condition is operative. But the supposed denial, unconstitutional denial, is the right to sue, which you obviously still have if the contract itself is breached. But in good faith and fair dealing, if the city denied it for any reason, and let's assume, perhaps, it's a legitimate reason, that we would not be able to access the courts. You could make the same argument about the unconstitutionality of it after you've executed the agreement as before if it's really unconstitutional. Isn't that correct? So you could say that that provision cannot be enforceable because it's unconstitutional. If, in fact, indeed it was unconstitutional before you signed it, it would have been unconstitutional after you signed it. Then I don't – frankly, Your Honor, I don't see the difference for signing it. Except that the parties would be bound. Why do we even get to this? I'm not sure whether you disagree, but I think the briefs should make it clear as well. There were four other reasons that were just enumerated by your opponent why your client did not sign this agreement. The agreement was never signed. But why are we even talking about this constitutional issue? Your client was never put to death. He decided not to sign the agreement for any number of reasons. Let's say that the waiver was completely out of this agreement. He still wouldn't have signed it according to what the record shows, would he? Well, there's evidence on the record that they were still at least my client felt that they would be able to work through the remainder. Well, he may have felt. But that's pure speculation. The reality is he didn't sign it, and there were four reasons beside the waiver issue that your client cited for not signing it. So my question is, as a court of appeal, why are we even addressing this issue of the waiver when there are any number of other reasons why he didn't sign it, he didn't make a choice? Now, had he signed it, then we would be talking about whether or not the waiver was enforceable based upon constitutional application. But he didn't sign it. Why are we even talking about this? Well, Your Honor, that goes back to Dolan, and I see I'm out of time. May I address it? Yeah. As long as we're asking the question, yeah. That goes back to Dolan. Dolan, the unconstitutional condition there was the exaction of a bypass and a greenway. But they exacted it there. No, they didn't. The Dolans did not agree to that. They said no, and they appealed that. They appealed those conditions to the Land Use Board of Appeals. And that was the only basis. And then it went up. That was the only basis. There weren't four or five other reasons. Remember that? Well, there were numerous reasons, as well as numerous reasons in Beezer as well for rejecting it. Just because the offer is rejected is not a basis in logic or fact to go ahead and say, well, you can put in whatever you want. The government can't go ahead and simply throw in unconstitutional conditions with a whole bunch of other bad things in the hopes that the citizen is so over the barrel that they have to agree. And that's the very function of the unconstitutional condition doctrine. And if I may just real quickly, the unconstitutional condition doctrine originated in the 1870s out of just such concerns, which were permits, permits to do business in a location. Let me ask one. Can I ask one final question? Now, just to sum up your position now, just speaking hypothetically, tell me what the worst case scenario is where this condition could have been applied to your client. Like, give me a for instance. How could it have been a concrete example of how it could have been unconstitutionally applied, this condition here in this factual setting? The city could have disallowed the building permit for impermissible reasons, i.e., the discrimination that's evident in some places in the record. And then even though there was a good faith and fair dealing, I think that passes a rational basis review that they say, well, we don't want these kinds of things. All right. So what you're saying is what you're saying is given this condition, even though under some other provision agreement, you applied for the permit, like you said you would, and you met all the conditions. In fact, the city said they said, well, you met all the conditions for the permit, but we're not going to give it to you because we changed our mind. You're saying then under this paragraph 11, you couldn't sue for that failure to grant the permit? Well, first, Your Honor, I agree. That's where you can sue paragraph 11? Yes. And the second answer to that is there were no conditions. There were no conditions to issuing the moving permit. It was wholly within the city's discretion. All right. Thank you both very much for your argument. Thank you. The case just argued is submitted. And we will next hear argument in the case of State of Oregon v. Legal Services Corporation. Thank you.
judges: Tashima, Smith, Wu